Well, here our argument in our final case of the morning, Case 24-119, United States v. Agor Good morning, your honors, Max Mizzono, on behalf of Defendant Appellant Omar Agor, Jr., may it please the Court, with the Court's permission, I'd like to reserve five minutes for rebuttal. There's numerous issues on appeal in this case. I want to spend the majority of my time focusing on the first issue primarily, which is the District Court closing the courtroom three separate times. Then I want to discuss the Torres issues, Government Witness Jake Torres, there's three remaining, discuss some of the other issues that this appeal raises. The first issue is that the District Court closed the courtroom on three separate occasions. It did so during witness proceedings and voir dire or jury issue proceedings for non-trivial durations without first complying with pertinent Supreme Court case law, and that constituted a new trial for the Defendant Appellant Omar Agor, Jr. Under pertinent Supreme Court case law, before closing a courtroom, the District Court must first find that there's an overriding interest likely to be prejudiced by not closing the  That was not present in this case. Second, the District Court, the closure itself must not be broader than necessary to protect that interest. Again, cases discussing what an overriding interest would be, would be a matter of national security or protecting the safety of an FBI agent or a witness. That was not the case here either. The trial court must also consider reasonable alternatives to closure. The District Court, both when it closed the courtroom on three separate times, as well in its written order, filed weeks later after Agor filed his motion for a mistrial, thus properly preserving this error, didn't consider any reasonable alternatives either. Lastly, the trial court made no findings, zero, under these two cases from the Supreme Court to justify the closure. Not at the time that it did it in court, and certainly not in its written order issued three weeks later. Were there timely objections? There was not an immediate objection. That's undisputed. There was not an immediate objection at the time of the closures, but Agor filed a motion for mistrial on March 20th, while the government was still presenting evidence during its case in chief, before the jury had reached its verdict, so the issue was preserved under Rules 51 and 52 of the Federal Rules of Criminal Procedure. Those rules and the case law that interpret it do not require an immediate objection. Well, I mean, if there's not an immediate objection, the judge can't do anything. You know, by the time that this was raised, the courtrooms had been closed. So I mean, usually we like the objection to come in so the judge has the opportunity to figure out, is he or she making this right decision in the moment, but if the issue is raised later, she wasn't given that chance. The issue was raised later. Again, I'm not disputing that, Your Honor. But it was still brought to the district court's attention as to remedy the violations. It could have, for example, granted the motion for a mistrial, conceding its errors. It could not do that. So what is the standard of review here in light of the fact that the objection came later? Well, from Agor's perspective, these are structural errors. Three times the district court judge closed the court. Structural errors. Case law is very clear. Vacating the judgment, remanding for a new trial is the remedy. The government wants this court to believe that plain error review applies. And that's just simply incorrect. The error was preserved in the district court. This court's decisions, both Hogan and Allen, which also had to do with both complete and partial closures, I will mention, and there's no dispute that these were complete closures of the courtroom. But in those cases, right, let's start with Hogan. In Hogan, the district court judge did a partial closure of the courtroom, right? There was contemporaneous access to the public of a video, or an audio feed rather. There was transcripts provided to the public. And there was media inside the courtroom. That was not present in Agor's trial at all during these three closures. Furthermore, in that case, trial counsel did not object to the closures at all until after the verdict was rendered. Agor, on the other hand, objected while the trial was still going on, while the district court could have remedied the issue by granting the motion for a mistrial. So we're not in Hogan territory here. We're in Allen territory. Where the error was properly preserved by Agor, the courtroom was completely closed, and in that case, in Allen, this court vacated and sent it back for a new trial, or new proceedings. That's what Agor is asking the court to do here. Counsel, I'd like to just ask a, you know, just a question about, is there any evidence in the record showing that there was somebody or anybody in the audience that day that was removed from the courtroom when they closed the court? Anything like that? I don't know if there was, I don't know if there's evidence that, that's before this that there was members of the public there. I do know just anecdotally that there were members from my office who were excluded from, who were not part of the trial team, rather, who were excluded from the courtroom during certain proceedings, right? So there was no public access other than the two parties, the defendant and various staff. And I just want to confirm, there was no recording going on? There was no recording. This was not a COVID-era trial where there's certain measures that courts around the country implemented to ensure the right to public access and to safeguard a defendant's right under the Sixth Amendment to an open and public trial. There were three closures, as I mentioned. Two had to do with juror misconduct, and the third had to do with government witness Jake Torres when the court on its own decided, well, he might be complicit in this crime with the defendant appellant. So let's see if we can appoint him counsel just so that he doesn't incriminate himself as the government called him as its next witness to testify during its case-in-chief. Let me ask you a little bit more. So how do you address our precedent in U.S. versus Rivera that questioning jurors in closed court does not implicate the Sixth Amendment? So the circumstances in Rivera are different from what we have here. We have three closures, number one. And secondly, just keeping the focus on the jurors for now and not getting to Torres, one of the issues, at least for the first closure, it came to light that this juror had not responded truthfully during the voir dire process. This juror did not respond to a different district court judge's voir dire instructions or questioning because the judge who actually handled the trial was different, and I'll get to that in Torres, the Torres issues. But that specific juror, who was already seated as a member of the jury, did not respond affirmatively to questions whether he had heard about the case or done outside research of the case. So this dealt with pretty flagrant juror misconduct, not answering truthfully the court's questioning during the voir dire process. And the way that it occurred here was the district court judge closed the courtroom, this juror had already been seated, there was a sealed hearing, and then all of a sudden the court gets opened up and that juror is no longer there. So nobody from the public had any idea of why the juror that had been seated was all of a sudden just missing from the jury. There is a second instance with regards to a juror, and this is the second closure, where the juror was not following the district court judge's order specifically to wear a mask. So flagrantly violating that district court judge's specific orders to wear a mask. All the jurors were required to wear a mask. Not everybody in the courtroom, the parties, the defendant, the witnesses, I think we had the choice whether to do that or not, but this district court judge made very clear that the jurors had to wear masks. This juror did not do that either. So having a hearing like that where the district court judge is telling the juror in open court, hey listen, you need to obey my orders, you can't just violate what I'm telling you to do, is vitally important for the public to see the judge doing his or her job fairly, to ensure that the jurors are being treated fairly despite their misconduct, but that did not occur at all here. So I hope that answers Your Honor's question with respect to the jurors, but this goes far beyond the jurors because we also have government witness Jake Torres, who as the We took a break, and then after that, another sealed hearing was held to question Torres whether he had counsel. Now, again, the values that an open trial seeks to promote are ensure a fair trial, remind the judge and prosecutor of their responsibility to the accused, encourage witnesses to come forward, and discourage perjury. That was from the Rivera case that Your Honor just asked me about. So in this case, as evident from the issues on appeal here, the Jake Torres, what the court did with Jake Torres is spawned a whole host of other issues, right? So the way that the court treated this, in its order at least, saying well, you know, this was an administrative matter, this was not, this was too trivial, I mean, that's just incorrect. This was a witness who the government had subpoenaed to testify, listed on their witness list, had investigated for years to determine whether or not he was also complicit or a co-conspirator or had exposure to the same exact crime that defendant appellant Agour was charged with, and the government decided we're calling this witness because he supports our theory of the case at the exact time that they called it, right? There was pretrial litigation about the government wanting to go into Jake Torres' bank records. They wanted an FBI agent who actually did testify at the trial to review and tell the jury, look, we've looked at Jake Torres' bank records. The same kind of deposits that the defendant, Omar Agour, has, all these various cash deposits, are nonexistent in Jake Torres. So the inference that we want the jury to draw is that Torres is not part of this crime. He's not in the same position that Agour is in as far as culpability. The district court also talked, well, I didn't want to embarrass Jake Torres, or they cite to all these cases in its order about witness welfare, and witness welfare, the case law that the district court cites in its order, is not about embarrassing a witness. It's really about safety matters for a witness. It's not to determine whether a witness should be afforded the time to consult with counsel because he might have exposure if he doesn't claim the Fifth Amendment. So, you know, even if the government comes up here and says, well, plain error reviews, that's what they're going to do, Agour still wins under even that standard, the reason being is the first three prongs of that test are easily met. Was there an error that occurred? Absolutely. Three closures. Was the error plain? Yes, because there was no findings added to the report at the time that the court closed the courtroom three separate times, or in its written order later on, to close the courtroom. It didn't explore any reasonable alternatives. It didn't articulate this overriding interest. The third prong is that the error affected the defendant's substantial rights. That's also met. The error is structural. It's closing the courtroom in violation of a Sixth Amendment right. And fourth, did the error affect the fairness, integrity, or public reputation of judicial proceedings? The answer, again, is yes. I understand that the court has discretion under that fourth prong. But again, I would just point back to both Hogan and Allen. Hogan, the error was not preserved in the district court. The objection was made after the verdict had rendered. There was other alternatives to view the closing of the court in that case. We are in Allen territory here. The reputation and integrity of the court was harmed by doing what it did. The public needs to know if jurors are misbehaving. The public needs to know if the government calls a witness, and then all of a sudden he's just disappeared from the trial, what happened to that witness? Why are we not hearing from that witness? When the government opened, they told the jury, you will hear from Jake Torres. He will be a witness for the government. That's in the government's opening. It certainly affected the fairness, because as I'll get to the other issues related to Jake Torres, it hamstrung the defense. All of Jake Torres' statements were consistent over the years that he'd been interviewed by his company, by Miami Police Department, by the FBI. Consistently narrated the same thing. Neither he, nor the defendant, Appellant Agour, participated in the bank theft of $400,000. Under either standard, but we'd ask the court to not apply plenary standard, but under either standard, Agour is entitled to a new trial and a vacation of his conviction. Going into Jake Torres, whether or not he had a good faith basis to invoke the Fifth Amendment, and did the district court make adequate findings to support a blanket invocation of that right? So again, Agour's position is no, a new trial is required for this reason as well. A district court judge is required to make an inquiry into the basis of a Fifth Amendment privilege, and may not permit the witness to refuse to testify, or there's no good faith basis to invoke the privilege. Counsel, let me ask you a few questions here. I do have questions on this issue in particular. Is there anything in the record about immunity for Torres' testimony? No. Okay. Did the defense propose any particular questions that it wanted to ask Torres that would not implicate him in the crime? I specifically went, and this is an excerpt of records, 1-173, 1-177, as well as the entirety of the March 20 Status Conference, that's one excerpt of record, 145. I told the district court specifically, here are all the areas of inquiry that I want to go through. The government's brief says, well, I waived that, but that's completely false. My response to the question posed by the court was, after the district court judge had made that finding with respect to, you can't really ask him anything about January 2nd or the events thereafter related to this theft, I told the district court judge, okay, if that's the court's ruling, I'm not just going to call him to ask him how his day is going. I wanted to focus specifically on all of his statements that had preceded this jury trial that were consistently denying his and Agor's involvement in the bank theft. Going back to the... Sorry, I still have questions for you. Whose burden is it to identify the questions that don't implicate Torres's Fifth Amendment right? Is it the court's, or is it the party that wants to call him as a witness? Well, the court has to do an inquiry into whether or not Torres, or any witness, has a good faith basis to invoke the Fifth Amendment. And even if the court makes a determination that, okay, yes, there's a good faith basis, the blanket invocation of that right, which is what occurred in this case, is disfavored. That's black-letter law under the circuit. Rather, a question-by-question basis is what's preferable. The only time a blanket invocation is allowed or is permissible is when the district court judge is acutely familiar with the case itself. And again, as our brief points out, as I just mentioned moments ago, this district court judge came in literally the day of trial. The district court judge who ruled on everything pre-trial, pre-trial conferences, motions in limine, other status conferences, etc., fell ill, unfortunately. And this other district court judge, who knew nothing about the case, came in, and after one day of trial, sua sponte said, I think from what I've seen, Jake Torres has some exposure here. But that was, again, despite the motions in limine, despite the government's trial brief, despite its representations at many proceedings prior, where the government essentially represented, we don't believe Jake Torres is part of this crime. So, it does seem pretty clear that Torres would be a suspect in the theft since he was with Agor when the money went missing. So, what questions or testimony do you claim he could provide that would not implicate him? Well, I narrated the statements that I wanted the district court judge to allow me to go into. They were all consistent over time. I don't think I provided a list of questions after she made her ruling. But the argument was, well, if he's now rendered unavailable, right, then the rules of federal evidence, the federal rules of evidence, particularly against his penal interest, 804, and the residual exception, 807, as well as the right for due process to present a complete defense, allowed these statements to come in. The government consistently argued that Agor's denials were consciousness of guilt evidence. That's what they argued in closing. They said he's lying, and that touches upon prosecutorial misconduct, which is another issue on appeal that warrants new trial. But they said that Agor's denials constituted consciousness of guilt evidence. How can it be, then, that Torres's similar denials are also not consciousness of guilt evidence, and therefore, against his penal interest, and should come under that exception as well? That's a follow-up question I have for you. Is there any case law that invoking the Fifth Amendment means that the prior statements are necessarily statements against interest under the hearsay rules? I wish I had the answer to that. I don't have a case off the top to answer the court's question there. But I just want to spend the remainder of my time just telling this court why the blanket invocation was so incorrect, and comparing it to a case that the government cited in its answering brief, which is Couser. In Couser, the court properly allowed a witness to invoke the Fifth Amendment and did a blanket invocation. In Couser, the witness had gave conflicting statements over the years. So the trial court judge there made the decision that, well, no matter how you testify, you could be subject yourself to perjury. That's not what happened here. Torres, again, over years, meetings with the FBI, meetings with the Maui Police Department, meetings with his own internal company, consistently narrated the same story over and over and over again. So consistent that the government had him come into court and was going to testify as a government witness to support its then-theory that Agor had acted alone. It wasn't until the district court judge came in on her own after one day of trial testimony and decided, we need to take a step back. But in Couser, again, the procedures were far different, too. In Couser, the district court judge allowed the defense counsel to question that witness outside the presence of the jury. That district court judge was familiar with the case. And the testimony that that witness would have provided in Couser would have been unhelpful to the defense. Torres' statements were crucial to the defense. The district court judge not allowing him to testify, highly prejudicial to Mr. Agor's defense, to defendant appellant Agor's defense. So I see that my time is up. I hope I can have some time. We will put two minutes on the clock when you come back. Thank you so much. Good morning. May it please the court, my name is Marshall Silverberg with Aslan Affinito, who is at counsel table. We represent the United States in this case. So, I'll address the order of the defendant's arguments and the way he presented them, unless the court wants me to do otherwise. Can I ask you some questions on the Fifth Amendment issue? Sure. Is there anything in the record about immunity for Torres or any plea deal? There is nothing in the record to reflect that the defense ever asked the government to give him use immunity for his testimony. Okay. And were there no narrow privileges that could have allowed Torres to testify? I'm sorry? Instead of the blanket privilege, could there not have been something more narrow, constructed? Was that considered? Well, either he was involved in the theft, or he knew about the theft, or he was not. So after he received counsel, counsel informed the court, and the counsel is a very experienced defense lawyer, informed the court that he discussed the matter with his client, and he advised his client to invoke his Fifth Amendment right not to incriminate himself. The court then inquired of the defendant himself, and he said after speaking to his lawyer, he was invoking his right not to incriminate himself. So either he was involved, or he knew about it, or he was not. And the implication was he was either involved, or he knew about it, and didn't want to incriminate himself. But is it the government's position that that's enough? That just making that general statement of, well, my lawyer told me not to, so I'm not. And also the lawyer saying to the court, I've talked to my client, I'm going to advise him to take the Fifth. Is there no more inquiry required? Well, if the defendant had wanted a case by, question by question, I think the court asked him, do you want to ask him any specific questions? And he said, well, if all his answers are going to be, he's going to invoke the Fifth, because he's going to incriminate himself, then I'm not going to bother. But she did give him that opportunity. So if there was something else that he wanted to bring out, as to, for example, whether they went to another location before heading back to the office, was he ever alone with the money, things like that, he could have asked that, and put that on the record, and then the court would have had to result under, I think it's Hoffman versus the United States, would have had to resolve that by question by question. But he gave up that opportunity, Mr. Mazzone did, and did not ask the court to ask any specific questions after the witness invoked his Fifth. I mean, the witness was in the position that either, if he didn't know anything, and was completely innocent, then he did not have a basis to invoke the Fifth, and should have compelled, they should have asked for immunity, they never did. There's nothing in the record to reflect they ever asked for it. This whole thing is about gamesmanship, if you want to know our position. So Rule 51B says, you have to make an objection when the court ruling or order is made or sought, not five days later. Under their theory, you could object, a defendant could object, at any time before the government rests, and say, we object to every question asked by the prosecutor, we object to every article, every piece of evidence that came in during the trial, and they would have preserved their right to an abusive discretion standard on appeal, or structural ever, or whatever. It would swallow the rule. And in this case, had they objected to the closing of the courtroom, there's no reason to believe that the judge would not have made the objection, and not closed the courtroom. They didn't say anything, until five days went by. Then all of a sudden... If it's structural error, does it matter? I mean, this is... I take your point on...  I take your point on admission of testimony, and what not, but if it's true structural error, which closing a courtroom for non-trivial reasons without following the procedure is, then don't they preserve it with the motion for neutral? Haugen says no. Haugen says you have to object. Otherwise, it's a plain error, and you have to show some sort of prejudice. You have to show that your substantial rights were affected.  I mean, our structural error cases basically say it's structural error. It's structural error. They're different from plain. It's different if you... Then you're reading out of existence Haugen. Haugen says structural error under Allen existed, but Allen, they objected, and Haugen, they didn't object. I mean, it's not like Mr. Mazzone was not there. He was there. So what you're saying is any time the court has a sidebar, for example... No, no, no, no. I'm not... You know, the Sixth Amendment only goes to... It doesn't go to substantial closures, non-trivial closures, non-administrative closures. I'm just saying, if it's structural error, that's not subject to plain error. Then you would be overruling... By Vester. By Vester, it was the exact same facts here. And by Vester, the difference was they objected. And this court said that a judge could question a juror in chambers. So this judge could have questioned the three jurors in chambers without the defendant present, without counsel present, and that would have been okay. The difference is... I mean, I'm surprised that your argument isn't... These are trivial. The reasons for closing and therefore the Sixth Amendment is implicated. But you're casting your whole... all of your chips in on the fact that it's plain error. No, we did also... I mean, the court below did say they were trivial. We did say that in our brief. So why do you think they're trivial? Okay, so the first... First of all, we say there are two closures and not three. The first closure had to do with this issue of whether a juror did improper research before trial and didn't tell the court about it. Okay, at that point, there was no opening statement. The trial hadn't even started yet. And it was no different than a hardship inquiry like in Murillo was where you could do a Batson challenge in the side room. It was not anything that had to do with the defendant's guilt or innocence. It had to do whether a particular juror conducted improper research and then concealed that from the court. How could it be more trivial than that? I mean, this is dealing with a particular juror and what the juror did, which is exactly what happened on Ivester. So... The second instance had to do with Mr. Torres. The only inquiry there was whether or not he needed counsel. That was it. How could it be more trivial than that? The judge said, Mr. Torres, you're scheduled to testify. Do you want... Have you consulted with a lawyer? No. Do you want a lawyer to be appointed for you? Yes. And that was it. I mean, that's pretty trivial. It has nothing to do with the defendant's guilt or innocence, just whether or not this witness needs a lawyer or not. The other one that they claim was a closure had to do whether or not the juror was wearing a mask. Surely, that's trivial. And which one do you claim was not a courtroom closure? The mask one? The mask one, yeah. So, the mask thing came up twice. The judge said, so, the first time and then the third time, what we call the second time, what does a courtroom close mean? Like, is this courtroom closed? Obviously not. But if Your Honor said and used these words, the courtroom is closed, does that really close it either? The way the first and the second           and the other time occurred, someone gets up and goes and locks the door and doesn't allow anyone in, that's a closed courtroom. That didn't happen in that so-called second time. There's no evidence in the record. And that's why in the first instance, the courtroom deputy said, is the courtroom open now? And the judge says, now the courtroom is open. But she got up and she unlocked the door. So, I have to tell you, I don't mean to put you  down to defense, but I find this whole thing bizarre. He sat there, he didn't object, and then five days later, he's saying,  the way the court should have corrected it is by granting the motion for mistrial after almost all the evidence was in. Not all of it, but almost all the evidence was in. The judge, I asked the judge, can you ask Mr. Mizzone, are they objecting to sidebars? And he refused to answer that question. And so, what did the court do? She never held a sidebar after that for fear that he was going to raise that later, even though we had a whole bunch of sidebars. Right. Sidebars are different from closing a court. He says no. He says no in his reply brief. He says no, but they're different. So, all I can say is, there's no reason to, and this whole thing about people in his office being excluded, there's no basis for that in the record. The judge made a factual finding that nobody was excluded from the courtroom. Nobody was asked to leave, nobody was prevented from entering. That's a factual finding that they did not challenge in their brief. This is the first I'm hearing in this courtroom,  that somebody from his staff was excluded. There's no basis for that in the record. Can we move on and ask you about sentencing? Sure. All right. How do we know Agor possessed a knife on January 2nd, 2020? I'm sorry. You said that so fast. Sorry. I do speak quickly. How do we know that Mr. Agor possessed a knife on January 2nd, 2020? Okay. So, there was a declaration done by his supervisor that's in the record that we attached saying that he always carried a knife with him whenever he did his job for protection purposes because he was not allowed to lawfully possess a firearm. His wife, at the time, who's now his ex-wife, testified that he always carried knives around with him. On the day of the incident with the prostitute on February 13th, he had two knives with him as well as a firearm. So, this is a judge who presided over the trial. She heard that testimony. She made a factual finding that I don't think they're challenging that maybe they are. But, the testimony which was unrebutted that he always carried a firearm because he's carrying hundreds of thousands of dollars in cash around with him. Sometimes they're out there on their own. There was testimony that they're driving around on their own and he's not allowed to possess a firearm because he didn't have a license from the county of Maui. So, she testified that he owned eight knives and he always carried one around with him. Okay, so does the in-connection with language require more than he carried a knife on that day because he was at work that day and he always carried a knife when he was at work? It's also the cutting of the seal. I know that was a little perhaps subtle. So, all the seals were cut at least once. One seal was cut twice and the testimony was that there was no need to cut it twice. So, that was our theory of the case and that's how they were able to take the seal off because it was cut twice. Once on the road somewhere and then the second time in the office. The in-connection with is done based upon two instances both on the date of the theft as well as on the 13th when he's spending the money and he's got all that money in his  We would submit that the factual record supports the judge's findings for both days. All we had to do was prove one of them. And tell me what in the record supports the court's conclusion that Agor had the weapons to evade arrest? Not to evade arrest but to protect himself. So, again the declaration from Joshua Brennan that's in our supplemental excerpts of record says that his opinion, Mr. Agor, in fact he got fired because he wasn't allowed to carry that firearm but he had the firearm in the backpack with $13,800 of money. I'm sure there are plenty of people who go visit prostitutes who are concerned about being robbed. It's in the bag. He's got a loaded clip that's not in the firearm but it's in the same backpack with the money. He's got the $20,000 in the trunk of his car. I mean the evidence in this case was really rather overwhelming the factual evidence. We think that any error was harmless because of that. I mean he was caught literally red handed with the stolen money. There was about six weeks of a time gap between when the money was allegedly stolen or stolen and when he was caught with the prostitute. I'm curious as to how far does the in connection with go. For example let's say you didn't catch him for two years and he had the gun on him. Is it still in connection with does it go back two years to say well when he you know stole the money he must have had the gun on him because he always has a gun on him and he had a gun on him when he had the money that we caught him with. I think it's a good question. I think it would be very fact specific. How much do you   would have charged the case. It was the $20,000 that was strapped showing that it was strapped on December 27, 2019 just a few days before that really was the most important evidence in this case. So if it's a one bill $100 bill two years later probably not. Is it $200,000 two years later with all the straps still intact then I would say yes. So I think it would be very fact specific. Any more questions? I just want to highlight just a couple other things if I might. So the defendant     in this case again I want to use the word gamesmanship because that's what's going on here because by not raising that objection until five days later then all of  saying your honor you illegally closed the  grant a new trial. If the court would say that that's okay and plain error does not apply then they could do that with any you would change trials throughout this circuit doing that because if you could preserve the error merely by raising it at the time before the  rests its case then it would swallow rule 51B whole.  says when the court says your honor we object to  courtroom being closed at any time during those two or  instances there's absolutely no reason to believe that this judge would not have said okay I won't close the  because that's exactly what happened when I said your honor can you ask Mr. Mizono if he objects to sidebars and he refused to answer that question so I know your honor said that they're different but they did not acknowledge that they were different. I know they didn't but there is a difference. Well there's also a difference between objecting at the time and objecting five months ago. I object to closing courtrooms that you did six months ago or five months ago. We object to the sidebar you did five months ago. We object to government's exhibit 254 from five months ago and therefore it would be reviewed under an abusive discretion. Is Hogan our main case on this or would there  be an  to on this issue? On the issue of whether it's preserved? Yeah. Yeah that's  Yeah it's directly on point. So Hogan they never raised it during the trial and they're saying in terms of when an objection is timely that would be the Supreme Court case of Puckett. I think it was Justice Scalia who said an objection has to be timely made or to avoid gamesmanship or you're waiving it except for plain error. I believe that was Justice Scalia who wrote Puckett. So that's the main case. Well the difference with Hogan is he didn't raise anything during the trial at all. He raised    here we have a motion for a mistrial. Right. So the only remedy is to grant a new trial. That's the remedy to an objection. What kind of remedy is that? I mean that's no different than this court reversing and saying we're demanding for a new trial. So what is the  gained by it? If the goal is to have a fair trial for both sides the objection has to be made timely. It's not only in rule 51 it's also in rule 103 A1B A1A says only a timely objection counts. How could it be timely five days later? I was shocked when they filed that motion for a mistrial. It's not like it was a different lawyer. It was by these lawyers who sat there during these three proceedings. Well it's really not unusual for defense counsel to wake up and see an error and make a motion for a mistrial to preserve it. It happens quite a bit and the only question is the merits of it. Well if you're saying it happens a lot over the closure of a  neither party cited anything like that. There may be motions for mistrial because of some other reasons. Let's say the motion for mistrial was based upon an item that came into evidence, an exhibit. The judge could say okay, I now see that that exhibit was improperly  I'm going to withdraw it and instruct the jury not to consider it and have a strong cautionary instruction. The jury  okay, you've corrected the problem, you've corrected the error. They couldn't rewind the TV and have these jurors come back and now open the courtroom and go through the case. The district court could have issued findings in accordance with the press enterprise. There's no requirement under Ivesta for findings or under Haugen if it's a plain error, untimely made objection. Haugen, they didn't make the objection during trial at all. The district court could have said all right, you've read the  now I'm going to make the findings and solve the problem probably. In my view, we have to look at the substance of the closures. But all I can tell you is from being in this job for 35 years, if you find that this objection was timely made, it's going to  change how trials are done. I don't think so. I mean, we've granted mandamus on courtroom closures before when nobody objected. So I'm just saying you're making an argument on plain error and I'm curious on the other       my questions. I would urge the court to follow that. Thank you. Thank you. I just want to respond to government counsel's remarks about a whole host of issues. Number one, government counsel now represents that there was only two closures, but if your honors look at the docket sheet itself, it clearly shows three closures in red on the docket sheet. The government's response to my motion for mistrial, that's at 7ER1430. The government concedes that there's three closures, so I don't know why the government is  that there's only two  closures. I don't know why the district court's order reflects that there was only two closures. There was three  That's very clear. The government keeps saying five days went by, but it was only one and a half trial days that went by with respect to this motion for mistrial. There was a weekend that book ended from when the Torres issue occurred to when the motion was filed. So five days Would it matter under your argument? If the trial had gone two months and you had made it on the last day, wouldn't you still be making the same argument? I would still be making the same argument and explaining to this court why we are in Allen territory and not  territory. Hogan, there was no objection to that trial. The objection was made after the  The reason why this court said that was not proper for amongst other reasons was we want to  sandbagging. That's not what occurred here. We preserved the error in front of the district court judge while the district court judge could have still issued a decision or corrected her previous decisions, but in the oral remarks in closing the courtroom and in the written order itself, no findings under Waller or Press Enterprise. Zero. It doesn't even discuss any analysis under those four factors. You know, the government also talked about No, but we do have to assess whether or not it was, it rose to the level of a constitutional violation, and I think you've got a tougher protocol on that one. Is Your Honor asking about trivialities? Is that what Your Honor is getting at? Yeah, so again, that's a very simple question that we    I think        So, again, the issue was predicated on the fact that maybe he has exposure.  don't want him to commit a crime   informed. No one knows why he's now all of a  missing from the trial. That should be done in front of the public. That was a violation of the Gore 6th Amendment right to prepare an open public trial. That constituted structural error requiring a vacation of the judgment and conviction and remanding for a new trial. Thank you. Thank you very much. That concludes our calendar for this morning. We'll stand adjourned until tomorrow.
judges: THOMAS, BRESS, ALBA